UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE DESOTO GROUP, LLC                                                     PLAINTIFF

V.                                     CIVIL ACTION NO.  3:20-CV-677-KHJ-LGI

LINETEC SERVICES, LLC                                            DEFENDANT

ORDER

This matter is before the Court on Defendant Linetec Services, LLC's ("Linetec") Motion to Dismiss [49] and Plaintiff The Desoto Group, LLC's ("Desoto") Motion for 56(d) Relief to conduct discovery [51]. For the reasons below, the Court grants in part Linetec's Motion to Dismiss. The Court denies Desoto's Motion for 56(d) relief as moot.

I.     Facts and Procedural History

Plaintiff Desoto's lawsuit arises from a subcontract and related discussions between Desoto and Lintec. In March 2019, Linetec contracted with Entergy Service, Inc. ("Entergy") to build a 15-mile transmission line in central Mississippi. Third Am. Compl. [48] ¶ 7; Memo Supporting Mot. to Dismiss [50] at 1. Allegedly, the contract between Linetec and Entergy required Linetec to "meet certain diverse . . . subcontractor goals or quotas," or be subject to a penalty of the contract price. [48] ¶ 8. Desoto alleges that it qualifies as a "disadvantaged business enterprise" because it is a business owned by disabled minority female veteran. *Id.* ¶ 4. In April 2019, Luke Hess from Linetec emailed Sonya Montgomery, a Desoto representative,

requesting a bid to provide the project with access mats and related services. *Id.* ¶¶ 9–11. Montgomery responded and prepared a "proposal." *See* Exhibit B [64-1] at 3. In May 2019, Montgomery submitted a bid to lease and install 2,270 mats. [48] ¶¶ 11, 13; Exhibit C [64-2] at 1.

In July 2019, Hess requested that Montgomery execute a Master Agreement ("MA"). [50] at 2–3; Exhibit F [64-5] at 2. The MA [49-1] did not include quantity or price and explicitly stated, "Linetec is hereby authorized but not obligated to issue or assign work to [Desoto]," and "Linetec makes no manner of a commitment, promise or guarantee as to any minimum or maximum volume or quantity of work to be issued or assigned hereunder." [49-1] ¶¶ 1.2, 1.3. The MA also expressly stated,

> No Order shall be valid unless signed where indicated on the form by a duly authorized representative of Linetec (an Area Manager is so authorized, conclusively). Absent [Desoto's] signature to any such valid Order, [Desoto's] commencement of Work shall constitute an effective mode of acceptance (thus triggering the automatic application of the Contract Documents), notwithstanding anything contained in [Desoto's] quote, proposal, acknowledgement, exception, notice, invoice, or other such instrument or means (oral or written) that is or may be construed to the contrary.[1]

*Id.* ¶ 1.4. After executing the MA, Hess emailed Montgomery notifying her, "We did have some overflow of mats from another job we recently completed so this may decrease the total number of mats needed." [48] ¶ 15; [64-5]. On July 12th, 2019,

---

[1] The Master Agreement defines Contract Documents as the MA, relevant provisions of the General Contract, and all Purchase Orders (i.e., the contract by which Linetec assigns work). *Id.* 1.2

2

Montgomery called Hess who allegedly stated he had only 200 to 300 mats but no more than 500. [48] ¶ 16; [64-5].

In August 2019, Montgomery emailed Hess asking for the start date and clarification about the details of the accepted proposal. [48] ¶ 18. Hess replied that Linetec "would use the quote attached [2,270 mats] however, as discussed earlier . . . the quantities are likely to reduce on the matting." *Id.* ¶ 19. In September 2019, Hess asked Desoto to review and adjust pricing to conform with Entergy's final project plans. *Id.* ¶ 23. Desoto responded with a "revised quote" accounting for 2,270 mats. *Id.* ¶ 24; Exhibit K [64-10]. On September 9th, Montgomery asked Hess a few questions about the parameters of the project, and the next day Hess stated Linetec planned to use 500+ mats of its own. [48] ¶ 21; Exhibit J [64-9]. Hess then requested Montgomery provide him with a "price breakdown" explaining the increase from the first quote to the second. [48] ¶ 26. Montgomery replied with another revised bid, this one accounting for 500 mats provided by Linetec. *Id.* After another request by Hess, Desoto sent another final bid on October 15th. *Id.* ¶ 27; Exhibit P [64-15]. This final bid had Desoto providing 2,270 mats and related services for $2,036,676.10. [64-15] at 6.

The project began sometime in late September. [64-10]. During the project, Linetec used at least 818 of its own mats and only 517 of Desoto's mats. [48] ¶¶ 32, 34. Desoto contends Linetec "performed a 'bait and switch' with Entergy and Desoto" by which Linetec claimed to perform roughly $2 million worth of business

with Desoto to procure the Entergy contract but pocketed the money Linetec saved by not using Desoto's mats. *Id.* ¶ 29.

After the project, Desoto claims Hess falsely spread that Desoto performed substandard work. *Id.* ¶ 46. These statements related to Desoto's performance on site, including claims that Desoto insisted mats be stacked on each other when unnecessary. Exhibit N (64-13).

Feeling aggrieved, Desoto sued Linetec. Compl. [1]. Desoto has since amended its complaint three times, once at the instruction of the Court to cure its complaint for prolixity. *See* Order denying Mot. to Dismiss [47]. In this most recent filing, Desoto recounted all the facts above but removed reference to an MA between the two parties. *See* [48]. Desoto asserts these claims: (1) Fraud, (2) Negligent Misrepresentation, (3) Accounting, (4) Breach of Contract, (5) Defamation, (6) Unjust Enrichment, (7) Promissory or Equitable Estoppel, and (8) Declaratory Judgment voiding provisions in the MA. *Id.* ¶¶ 30–73. Linetec moves to dismiss the Third Amended Complaint for failure to state a claim and for failure to comply with Rule 8 and the Court's prior orders. *See* [50]. In response, Desoto moves for discovery under Rule 56(d), [51], and concedes its claim for an accounting, Resp. Memo [54].

II.   Standard

When considering a motion under Rule 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v.*

4

*The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (alteration omitted)). A valid claim for relief contains "sufficient[ly enough] factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard does not ask for a probability of unlawful conduct but does require more than a "sheer possibility." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy a plaintiff's pleading burden. *Id.* (citing *Twombly*, 550 U.S. at 555).

Generally, if the Court considers material outside the pleadings, it must convert a motion to dismiss under 12(b)(6) into a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). But the Court may consider attached addenda incorporated into the complaint by reference under 12(b)(6). *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citations omitted). Furthermore, a court may also consider documents attached to a motion to dismiss if "they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

III. Analysis

The Court will consider the pleadings, motion to dismiss, and all attached addenda under the Rule 12 standard. By attaching addenda, Desoto incorporates them into its Complaint. Linetec also attaches the MA to its Motion to Dismiss. In

5

determining whether to consider the MA under a Rule 12 standard, the Court must decide whether the Complaint refers to the contract and whether the contract is central to Desoto's claims. *See Collins*, 224 F.3d at 498–99. While the operative Complaint does not discuss the MA, it seeks declaratory judgment related to some of its provisions. *See* [48] ¶ 73. Additionally, several of the incorporated addenda mention the MA as a signed document between the parties and attach the MA to emails. [64-5] (MA attached in docx format). The briefings and pleadings also indicate the MA is central to this case. Desoto explicitly asks the Court to declare certain provisions in the MA as void, [48] ¶ 73, and Desoto discusses the MA (calling it the MSA) as an executed agreement between the parties in its Opposition to this Motion to Dismiss. *See* [54] at 5–8. The MA is vital to the breach of contract claim as both parties recognize—to varying degrees—it governed their relationship. Linetec moves to dismiss all claims under Rules 12(b)(6) and 8.

    a. Rule 12(b)(6) Motion

Linetec argues the MA precludes Desoto's breach of contract claim; the fraud and misrepresentation claims fail to plead with particularity, state a claim, or identify damages; the unjust enrichment and estoppel claims fail to identify detriment or damages to Desoto; the defamation claim only seeks damages related to the contract and fails to allege negligence or state a demonstrably false claim; and the claim for declaratory judgment is improper. [50] at 3–19. Desoto concedes to dismissal of its accounting claim. [54] at 19. The Court finds Desoto states a claim

for fraud and misrepresentation, breach of contract, defamation[2], and promissory estoppel. The Court dismisses the next claims for the reasons below.

### i. Unjust Enrichment

Desoto alleges it was "deprived of revenue . . . paid by Entergy to Linetec that lawfully should have been paid to Desoto Group," and Linetec "has been enriched by the value of the work that would have been done by Desoto Group." [48] ¶¶ 60, 63. An unjust enrichment claim is an equitable claim by which a plaintiff seeks remedy for monies or benefits given to the defendant. *See Willis v. Rehab Sols, PLLC*, 82 So. 3d 583, 588 (Miss. 2012). Unjust enrichment only applies "where there is no legal contract and the 'person sought to be charged is in possession of money . . . which in good conscience and justice he should not retain . . . .'" *Miss. Dep't of Envtl. Quality v. Pac. Chlorine, Inc.*, 100 So. 3d 432, 442 (Miss 2012) (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)).

Desoto fails to state a claim for unjust enrichment. Either a contract for 1,770 mats existed between Desoto and Linetec or it did not. If a contract did exist, Desoto can recover under a breach of contract theory, and equitable relief is unwarranted. If there was no contract, Desoto may be able to claim equitable restitution in any unpaid for benefits given to Linetec. Desoto does not allege Linetec failed to pay for services Desoto rendered. Rather, Desoto asserts Linetec should not have done work

---

[2] Desoto mentions a violation of its "right to privacy" [48] ¶ 51. If Desoto attempts to state a claim for false light invasion of privacy, the Court dismisses it for failure to allege offensiveness or publicity. *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77, 79 (Miss. 1986); *see also Williamson v. Keith,* 786 So. 2d 390, 396 (Miss. 2001); Restatement (Second) of Torts, § 652E cmt. a (applying the same "publicity" standard under a "publicity given to private life" theory).

that should "have been done by Desoto Group" and seeks part of the payment from Entergy to Linetec. [48] ¶¶ 60, 63, 65. Because Desoto does not allege any legally sufficient interest in Entergy's payments to Linetec, the Entergy contract could not unjustly enrich Linetec at Desoto's expense. Put simply, Desoto's unjust enrichment claim cannot proceed where a "mistaken payment" is not present. *Willis*, 82 So. 3d. at 588 ("Nonetheless, our law is clear on unjust enrichment – it is based upon a mistaken payment, and it applies only where no legal contract exists."). The Court dismisses Desoto's unjust enrichment claim.

      ii. Declaratory Judgment

Desoto seeks declaratory judgment relief holding the limitation of liability provisions in the MA void based on public policy and intentional misconduct. "The Declaratory Judgment Act of 1934 . . . styled 'creation of remedy,' provides that . . . a competent court may 'declare the rights and other legal relations' of a party 'whether or not further relief is or could be sought.'" *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 241 (1952) (quoting 28 U.S.C. § 2201). The Act confers broad discretion on the Court to hear a suit for declaratory relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). When a claim for declaratory relief is duplicative or adds nothing to the action, courts often dismiss. *See, e.g., Bradley v. Viking Ins. Co.*, No. 3:20-cv-640-TSL-RPM, 2021 WL 684160, at *4 (S.D. Miss. Feb. 22, 2021).

The Court dismisses Desoto's independent count seeking declaratory relief from MA provisions. Because the Court is likely to resolve it as part of the other claims or defenses, a declaration is unnecessary at this time.

b.  Rule 8 – Prolixity

Since the previous Order, Desoto substantially reduced the length and verbosity of its pleadings. The Court understands Linetec's concerns about excessive and unnecessary addenda, but what the Third Amended Complaint lacks in brevity, it made up for in clarity. Linetec can now deduce various grounds for relief asserted and has notice of the claims going forward. The Court denies the Motion to Dismiss for prolixity.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the reasons stated, Linetec's Motion to Dismiss [49] is granted in part and denied in part. The Court dismisses Desoto's claims for unjust enrichment, accounting, and declaratory judgment. Desoto's Motion for 56(d) relief [51] is moot.

SO ORDERED AND ADJUDGED this the 11th day of January, 2022.

                                                s/ *Kristi H. Johnson*
                                                UNITED STATES DISTRICT JUDGE